UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ERIN N. HELD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. 4:25-CV-01213-SPM |
| | ) | |
| UNITED PARCEL SERVICE, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on the Motion for Summary Judgment filed by Defendant United Parcel Service, Inc. ("Defendant" or "UPS"). (Doc. 38). The motion has been fully briefed.[1] The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C.§ 636(c)(1). (Doc. 21). For the following reasons, the motion will be granted.

## I. BACKGROUND

Plaintiff is a former Hub Supervisor for UPS. In her Complaint, she alleges the following. On September 7, 2023, her coworkers bullied and harassed her in a meeting. They made derogatory

[1] Defendant filed a motion for summary judgment, Plaintiff filed a response, and Defendant filed a reply. Plaintiff subsequently filed a "Supplemental Response to Defendant's Reply in Support of Summary Judgment." Doc. 46. Local Rule 4.01(C) provides that after a reply memorandum, "[a]dditional memoranda may be filed by either party only with leave of Court." E.D. Mo. L.R. 4.01(C). Because Plaintiff did not seek or obtain leave to file the supplemental response, it will not be considered. *See, e.g., Derby v. Wiskus*, No. 4:19-CV-02271-SRC, 2022 WL 2340547, at *1 (E.D. Mo. June 29, 2022) (declining to consider pro se litigant's sur-reply because "Local Rule 4.01(C) prohibits parties from filing additional memoranda beyond a response and reply without leave of Court."). The Court notes, however, that its conclusions would be the same even if the Supplemental Response were considered.

and unprofessional comments to her, including calling her a liar, calling her disorganized, and saying she did not deserve her position. Her immediate manager allowed this behavior to continue. Plaintiff was approved for FMLA leave and took medical leave due to job stress and several mental disorders. While she was on leave, she was in contact with UPS employees, and she "applied for an ADA." On November 15, 2023, she received a letter terminating her employment with UPS, purportedly because she did not report to work or communicate her status or expected date of return. Plaintiff asserts that UPS failed to accommodate her disability and that she experienced retaliation and harassment. She believes she was discriminated against because of her race, color, gender, and disability. Plaintiff asserts claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.*, the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101, *et seq*., and the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 701, *et seq*.[2]

UPS now moves for summary judgment on all three of Plaintiff's claims. UPS argues that it is entitled to summary judgment on Plaintiff's Rehabilitation Act claim because UPS is not in the narrow class of private employers to which the Rehabilitation Act applies. UPS argues that it is entitled to summary judgment on Plaintiff's ADA and Title VII claims because Plaintiff did not timely file a charge with the Equal Employment Opportunity Commission ("EEOC"), as required to exhaust administrative remedies.

---

[2] Although Plaintiff mentions the FMLA in her Complaint, she does not include an FMLA claim among her causes of action. *See* Compl., Doc. 1, at pp. 1-2. Additionally, Plaintiff does not mention FMLA claims in her briefing, nor does she challenge Defendant's assertion in its summary judgment briefing that "[t]he only claims that Held has alleged in her Complaint are under Title VII, the ADA, and the Rehabilitation Act." *See* Def.'s Mem. Supp., Doc. 39, at p. 9; Pl.'s Resp., Doc. 44, Pl.'s Supp. Resp., Doc. 46.

## II. LEGAL STANDARD

The Court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it 'might affect the outcome of the suit.'" *Dick v. Dickinson State Univ.*, 826 F.3d 1054, 1061 (8th Cir. 2016) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986)). "A genuine dispute exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Cameron v. City of Des Moines*, 168 F.4th 522, 527 (8th Cir. 2026) (quoting *Graham v. Barnette*, 5 F.4th 872, 881 (8th Cir. 2021)). "The movant 'bears the initial responsibility of informing the district court of the basis for its motion,' and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Celotex*, 477 U.S. at 324). "In order to survive a motion for summary judgment, the non-moving party must be able to show sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy." *Binkley v. Entergy Operations, Inc.*, 602 F.3d 928, 931 (8th Cir. 2010) (quoting *Godfrey v. Pulitzer Pub. Co.*, 276 F.3d 405, 412 (8th Cir. 2002)).

## III. FACTS

Local Rule 4.01(E) provides as follows:

> Every memorandum in support of a motion for summary judgment must be accompanied by a document titled Statement of Uncontroverted Material Facts, which must be separately filed using the filing event, "Statement of Uncontroverted Material Facts." The Statement of Uncontroverted Material Facts must set forth each relevant fact in a separately numbered paragraph stating how each fact is established by the record, with appropriate supporting citation(s). Every

> memorandum in opposition must be accompanied by a document titled Response to Statement of Material Facts, which must be separately filed using the filing event "Response to Statement of Material Facts." The Response must set forth each relevant fact as to which the party contends a genuine issue exists. The facts in dispute shall be set forth with specific citation(s) to the record, where available, upon which the opposing party relies. The opposing party also shall note for all disputed facts the paragraph number from the moving party's Statement of Uncontroverted Material Facts. **All matters set forth in the moving party's Statement of Uncontroverted Material Facts shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.**

E.D. Mo. L.R. 4.01(E) (emphasis added). Here, Defendant filed a Statement of Uncontroverted Facts, with attached exhibits, that complied with this rule. Plaintiff filed a Response in Opposition to Defendant's Motion for Summary Judgment, in which she asserted that "genuine issues of material fact exist" and that "Defendants' motion relies on a disputed timeline." Doc. 44, at p. 2. However, Plaintiff did not file a separate Response to Statement of Material Facts, as required by Rule 4.01(E). Moreover, the document she filed failed to "set forth each relevant fact as to which [she] contends a genuine issue exists," failed to include any "specific citation(s) to the record," and failed to "note for all disputed facts the paragraph number from the moving party's Statement of Uncontroverted Material Facts."

After Defendant filed its reply pointing out Plaintiff's failure to comply with Rule 4.01(E), Plaintiff filed a "supplemental response" in which she argued that Defendant's facts should not be deemed admitted and that summary judgment "cannot be granted solely on procedural grounds where the record demonstrates genuine disputes of material fact, particularly where the nonmoving party is proceeding pro se." Doc. 46, at p. 1. The supplemental response, which was filed without leave of court in violation of Local Rule 4.01(C), fails to make any attempt to comply with any of the requirements of Rule 4.01(E) and fails to cite to any evidence in the record.

Plaintiff's pro se status does not excuse her from the requirements of the local rules. *See Soliman v. Johanns*, 412 F.3d 920, 922 (8th Cir. 2005) ("Even pro se litigants must comply with court rules and directives.") (citing *Schooley v. Kennedy*, 712 F.2d 372, 373 (8th Cir. 1983)). As a result of Plaintiff's failure to specifically controvert the facts asserted in Defendant's Statement of Uncontroverted Facts as required by Rule 4.01(E), the Court will deem those facts admitted. *See Roe v. St. Louis Univ.*, 746 F.3d 874, 881 (8th Cir. 2014) (citing E.D. Mo. L.R. 4.01(E) and stating, "If no objections have been raised in the manner required by the local rules, a district court will not abuse its discretion by admitting the movant's facts."); *DaPron v. Spire, Inc. Ret. Plans Comm.*, 377 F. Supp. 3d 946, 950 (E.D. Mo. 2019) (deeming movant's facts admitted where the nonmovant either failed to submit responses to those facts or failed to cite to specific portions of the record to support his objections), *aff'd sub nom. DaPron v. Spire Missouri, Inc.*, 963 F.3d 836 (8th Cir. 2020); *Young v. Mayor of City of Saint Louis*, No. 4:21-CV-776 RLW, 2023 WL 4706020, at *2 (E.D. Mo. July 24, 2023) (deeming facts admitted where pro se party did not respond to the defendants' statement of uncontroverted material facts as required by Rule 4.01(E)); *Carpenter v. Merritt Hosp., LLC* No. 4:24-CV-00042-SRC, 2025 WL 2403050, at *1 (E.D. Mo. Aug. 19, 2025) (same), *aff'd,* No. 25-2741, 2026 WL 592359 (8th Cir. Mar. 3, 2026).

Although Defendant's facts are deemed admitted, that does not mean that UPS is automatically entitled to summary judgment. The Court will still need to determine whether Defendant is entitled to judgment as a matter of law based on those undisputed facts. *See, e.g., Curry v. Bi-State Dev.*, No. 4:23 CV 487 CDP, 2024 WL 4791928, at *1 (E.D. Mo. Nov. 14, 2024). The Court will carefully consider Plaintiff's arguments in making that determination.

The following facts are undisputed for purposes of the instant motion. Plaintiff began working at UPS at its Earth City, Missouri, facility on August 3, 2020. UPS does not accept transfer

of government funds by way of a subsidy, or a sale of government assets at reduced consideration. UPS does not receive federal financial aid for the company as a whole and has no specific program or activity that received federal funding (or federal financial aid/assistance) during Plaintiff's employment. UPS's Earth City, Missouri, facility did not receive federal financial assistance and has no specific program or activity that received federal funding (or federal financial aid/assistance) during Plaintiff's employment.

Plaintiff's last day working for UPS was September 7, 2023. On the morning of that day, she attended a meeting where coworkers made comments criticizing her performance. The comments concerned her co-workers' perception of Plaintiff's disorganization and other mistakes. Plaintiff left work that day and never returned. UPS issued Plaintiff a letter on November 3, 2023, informing Plaintiff that she had been on unauthorized leave since September 7, 2023, and that her employment would be ended if she did not return to work or follow UPS's process to request an authorized leave by November 8, 2023. On or about November 15, 2023, having confirmed that Plaintiff had not returned to work and remained on unauthorized leave, Plaintiff's Hub Division Manager Eda Bolton had a separation letter sent to Plaintiff, discharging Plaintiff on November 15, 2023. Bolton did so in accordance with UPS's practices and procedures for a supervisor that does not return to work and instead, remains on unauthorized leave. On or around November 17, 2023, Plaintiff received by mail the letter notifying her of UPS's decision to terminate her employment for failing to return to work.[3]

[3] Defendant asserts that Plaintiff received this written notice "on or about November 15, 2023." Def.'s SUMF, Doc. 40, ¶ 10. Some of the materials cited, however, support a finding that Plaintiff did not receive the letter until November 17, 2023. *See id*. The Court views the facts in the light most favorable to Plaintiff and assumes Plaintiff received notice of the termination on November 17, 2023.

On April 30, 2024, Plaintiff made an initial inquiry with the EEOC to schedule an intake appointment. Plaintiff also made an inquiry with the Department of Justice ("DOJ") in May 2024, and the DOJ forwarded the information in that inquiry to the EEOC for processing. The EEOC opened a file as an "inquiry" and held an initial intake interview with Plaintiff on June 7, 2024. During the initial intake interview, the EEOC investigator advised Plaintiff that, based on Held's own version of events, if Plaintiff filed a charge, the investigator would recommend immediate dismissal of the charge. The initial intake interview ended with Plaintiff "declin[ing] to file [an EEOC charge] at this time." On July 25, 2024, the EEOC closed the file, noting that the "Inquiry has been closed with reason [that Plaintiff] declined to file" a charge.

On November 14, 2024, one year after her discharge, Plaintiff contacted the EEOC about obtaining a right-to-sue notice. On November 20, 2024, Plaintiff left a voicemail for the EEOC investigator stating, "I spoke to you about a week ago about drafting a charge of discrimination for me to sign . . . . " On December 3, 2024, the EEOC sent Plaintiff a reminder that her draft charge of discrimination was ready for her review and signature. Two days later, Plaintiff responded that she was "having her consultant review" the draft, and thus, was not ready to sign. The EEOC responded the next day, stating, "Your charge was sent to you for review and signature on November 26, 2024 as to date it has not been signed. If the signed charge is not received by December 9, 2024, I close the inquiry. If the inquiry is closed you will need to contact me to reopen it." Plaintiff responded on December 9, 2024, asking the EEOC not to close the inquiry and advising that she needed a few more days, but the EEOC again closed the inquiry due to Plaintiff's inaction.

Almost five months later, on April 15, 2025, Plaintiff advised the EEOC that she wanted to move forward. On April 24, 2025, and April 28, 2025, Plaintiff provided the EEOC changes to

her draft charge. On April 28, 2025, the EEOC sent Plaintiff the draft charge through the EEOC portal for Plaintiff to review and sign. Plaintiff reviewed and signed her EEOC charge on April 29, 2025, more than seventeen months after her discharge. The EEOC issued its Determination and Notice of Rights on May 13, 2025.

Plaintiff has submitted a Declaration in which she states, "I declare under penalty of perjury that I pursued EDR, remained on LTD, participated in mediation, and that my EEOC inquiry and charge were continuous and reopened before I signed." Doc. 44, at p. 4.

## IV. DISCUSSION

### A. Rehabilitation Act Claims

UPS argues that it is entitled to summary judgment on Plaintiff's claims of discrimination under the Rehabilitation Act because UPS is not an employer to whom the Rehabilitation Act applies. Plaintiff does not respond to this argument.

"Congress enacted the Rehabilitation Act as a comprehensive federal program to ensure that individuals with disabilities would not be denied the benefits of or be subjected to discrimination under any program or activity receiving federal funding." *Argenyi v. Creighton Univ.*, 703 F.3d 441, 448 (8th Cir. 2013) (internal citations and quotation marks omitted). The Rehabilitation Act provides, in relevant part:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination **under any program or activity receiving Federal financial assistance** or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a) (emphasis added). A private company "cannot be subjected to Rehab Act liability when it received no Federal financial assistance." *O'Connor v. Metro Ride, Inc.*, 87 F. Supp. 2d 894, 898 (D. Minn. 2000) (granting summary judgment on a Rehabilitation Act claim

against a company that received no federal financial assistance). *See also Muller v. Hotsy Corp.*, 917 F. Supp. 1389, 1417 (N.D. Iowa 1996). A company "receives 'financial assistance' within the meaning of [29 U.S.C. § 794] when it receives a subsidy," but not when the government compensates the company for goods and services received. *Muller*, 917 F. Supp. at 1417.

UPS has submitted evidence that it does not receive federal financial assistance and that it receives funds from the federal government only as payments for services provided. *See* Decl. of Ryan Bankerd, Doc. 40-5. Based on the undisputed evidence presented by UPS, and in the absence of any contrary evidence or argument from Plaintiff, the Court agrees that Defendant has established that it is not subject to the Rehabilitation Act and is thus entitled to summary judgment on Plaintiff's Rehabilitation Act claim. *See O'Connor*, 87 F. Supp. 2d at 898.

**B. ADA and Title VII claims**

UPS argues that it is entitled to summary judgment on Plaintiff's ADA and Title VII claims because Plaintiff did not exhaust administrative remedies by timely filing a charge with the EEOC. Under both Title VII and the ADA, before filing a lawsuit in federal court, a plaintiff must first exhaust administrative remedies. *See Zarn v. Minn. Dep't of Hum. Servs.*, 165 F.4th 1143, 1149 (8th Cir. 2026) (Title VII); *Kale v. Aero Simulation, Inc.*, 139 F.4th 684, 689 (8th Cir. 2025) (ADA). To exhaust administrative remedies, "'an individual must: (1) timely file a charge of discrimination with the EEOC setting forth the facts and nature of the charge and (2) receive notice of the right to sue.'" *Zarn*, 165 F.4th at 1149 (quoting *Williams v. Little Rock Mun. Water Work*s, 21 F.3d 218, 222 (8th Cir. 1994)). "The reason for requiring the pursuit of administrative remedies first is to provide the EEOC with an initial opportunity to investigate allegations of employment discrimination and to work with the parties toward voluntary compliance and conciliation." *Moses v. Dassault Falcon Jet-Wilmington Corp.*, 894 F.3d 911, 920 (8th Cir. 2018) (quoting *Parisi v.*

*Boeing Co.*, 400 F.3d 583, 585 (8th Cir. 2005)). "Failure to exhaust administrative remedies is an affirmative defense that a defendant must prove." *Kirklin v. Joshen Paper & Packaging of Arkansas Co.*, 911 F.3d 530, 534 (8th Cir. 2018) (citing *Miles v. Bellfontaine Habilitation Ctr.*, 481 F.3d 1106, 1107 (8th Cir. 2007) (per curiam). *See also Wertz v. Mercy Health*, No. 4:23-CV-00579-NCC, 2024 WL 3427218, at *5 (E.D. Mo. July 16, 2024).

Under Title VII, an employee who (like Plaintiff) has instituted proceedings with a State or local agency "generally must file a charge with the EEOC within 300 days 'after the alleged unlawful employment practice occurred.'" *Hutson v. Wells Dairy, Inc.*, 578 F.3d 823, 825-26 (8th Cir. 2009) (quoting 42 U.S.C. § 2000e–5(e)(1)).[4] Similarly, "[u]nder the ADA, an employee must file a charge of discrimination . . . within 300 days of the alleged discrimination." *Henderson v. Ford Motor Co.*, 403 F.3d 1026, 1032 (8th Cir. 2005) (citing 42 U.S.C. § 12117). "A claim is time barred if it is not filed within these time limits." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002). *See also Kirklin*, 911 F.3d at 534 (affirming summary judgment in favor of the defendant on a Title VII claim where the plaintiff filed an EEOC charge outside of the time frame provided in 42 U.S.C. § 2000e-5(e)(1); *Hutson*, 578 F.3d at 827 (affirming grant of summary judgment in favor of the employer on a Title VII claim where the plaintiff did not file an EEOC charge until 303 days after she was notified by her supervisor of the decision to terminate her employment).

UPS argues that the 300-day period began running for Plaintiff's harassment/hostile work environment claims on September 7, 2023 (the last day she was physically at her workplace) and expired on July 3, 2024. It argues that the 300-day period began running for Plaintiff's termination

---

[4] The record shows that Plaintiff filed a charge with the Missouri Commission on Human Rights. *See* Def.'s Ex. 1, EEOC Records, Doc. 40-1, at p. 17. The parties agree that the 300-day deadline applies in this case, not the shorter 180-day deadline that applies in some cases.

claims on November 17, 2023 (the date she received the letter terminating her employment) and expired on September 12, 2024. Defendant also argues that it is undisputed that Plaintiff did not file a charge with the EEOC until April 29, 2025—several months after both deadlines had expired. Reading Plaintiff's pro se opposition brief broadly, Plaintiff appears to argue that there is a genuine dispute of material fact regarding when the 300-day period began to run on her claims, whether her initial inquiry with the EEOC in April 2024 should be considered a "charge," and whether equitable tolling should be applied to extend the deadline for her to file her charge. The Court will address each argument in turn.

*1. When the 300-Day Period for Filing a Charge Began to Run*

For a claim based on a hostile work environment, an employee must "file a charge within . . . 300 days of any act that is part of the hostile work environment." *Morgan*, 536 U.S. at 118. The last possible act that was part of a hostile work environment or harassment occurred on September 7, 2023—the last day Plaintiff was physically present at UPS. The record contains no allegations or evidence of any harassment occurring after that date. Thus, absent any tolling or other special circumstances, the last date for Plaintiff to file a timely EEOC charge based on the alleged harassment and hostile work environment was 300 days later: July 3, 2024.

For a claim based on termination, than employee must file a charge within 300 days of the date the employee is notified of the decision to terminate her employment. *See, e.g., Hutson,* 578 F.3d at 826 ("Once Hutson was notified by her supervisor of the decision to terminate her employment, the 300-day clock for filing a charge started to run."). *See also Henderson*, 403 F.3d at 1032 ("The cause of action "accrue[s] [on] the date on which the adverse employment action is communicated to the employee."). It is undisputed that Plaintiff was notified of UPS's decision to terminate her employment no later than November 17, 2023. Thus, absent any tolling or other

special circumstances, the last date for Plaintiff to file a timely EEOC charge based on the termination was 300 days later: September 12, 2024.

Plaintiff appears to argue that because she initiated an employment dispute resolution process, participated in mediation in October 2024, and continued dispute resolution into 2025, her claims did not accrue until those processes had concluded. Plaintiff does not direct the Court to any evidence of when these dispute resolution processes occurred, what they involved, or when they concluded. The Court finds her argument unpersuasive. The only authority Plaintiff cites for this argument, *Delaware State College v. Ricks*, 449 U.S. 250 (1980), supports the opposite conclusion. In *Ricks*, a college's board of trustees formally voted to deny tenure to the plaintiff in a decision communicated by a June 26, 1974, letter. *Id.* at 252-53. Dissatisfied with the tenure decision, the plaintiff filed a grievance with the appropriate committee, which held a hearing, took the matter under submission, and notified the plaintiff on September 12, 1974, that the grievance had been denied. *Id.* at 252-54. The Supreme Court held that the time period for Plaintiff to file an EEOC charge began to run by the date the plaintiff was notified that tenure had been denied. *Id.* at 261-62. Addressing and rejecting the argument that the period did not begin to run until the grievance process had concluded, it stated:

> Two possible lines of reasoning underlie this argument. First, it could be contended that the Trustees' initial decision was only an expression of intent that did not become final until the grievance was denied. In support of this argument, the EEOC notes that the June 26 letter explicitly held out to Ricks the possibility that he would receive tenure if the Board sustained his grievance. *See* n.2, *supra*. Second, even if the Board's first decision expressed its official position, it could be argued that the pendency of the grievance should toll the running of the limitations periods.
>
> We do not find either argument to be persuasive. As to the former, we think that the Board of Trustees had made clear well before September 12 that it had formally rejected Ricks' tenure bid. The June 26 letter itself characterized that as the Board's "official position." *Ibid.* It is apparent, of course, that the Board in the June 26 letter indicated a willingness to change its prior decision if Ricks' grievance were found to be meritorious. But entertaining a grievance complaining of the

> tenure decision does not suggest that the earlier decision was in any respect tentative. The grievance procedure, by its nature, is a *remedy* for a prior decision, not an opportunity to *influence* that decision before it is made.
>
> As to the latter argument, we already have held that the pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations periods. *Electrical Workers v. Robbins & Myers, Inc.*, 429 U.S. 229 (1976). The existence of careful procedures to assure fairness in the tenure decision should not obscure the principle that limitations periods normally commence when the employer's decision is made.

*Id.* at 505-06.

Here, the letter terminating Plaintiff's employment stated, "your employment with United Parcel Service is hereby terminated effective November 15, 2023. I have included an Employee Dispute Resolution (EDR) booklet, should you choose to avail yourself of this program." Def.'s Ex. 3, Termination Letter, Doc. 40-2, at p. 2. As in *Ricks*, even though the letter communicated the possibility of a dispute resolution procedure, this letter unequivocally communicated that the employer had made its employment decision. There was nothing equivocal about the language of the letter. Indeed, Plaintiff has consistently represented that the November 15, 2023, letter terminated her employment. *See* Compl., Doc. 1, at p. 7 ("On November 15, 2023, I received a letter from Eda Bolten terminating my employment with UPS . . . ."); Def.'s Ex. 1, EEOC Records, Doc. 40-1, at p. 9 ("On November 17, 2023, by mail, I received a letter terminating my employment with UPS."). Also as in *Ricks*, the fact that Plaintiff availed herself of the dispute resolution procedure and that Defendant participated indicates only that there was a procedure to remedy or change the employer's decision, not that the decision was tentative or had not yet been made.

As to Plaintiff's hostile work environment claim, Plaintiff has not cited, and the Court has not found, any authority to suggest that it did not accrue until the conclusion of employment

dispute resolution proceedings. As discussed above, an employee must "file a charge within . . . 300 days of any act that is part of the hostile work environment." *Morgan*, 536 U.S. at 118.

For all of the above reasons, the Court finds as a matter of law that the 300-day period for filing an EEOC charge began to run on September 7, 2023, for Plaintiff's harassment/hostile work environment claims and on November 17, 2023 for Plaintiff's termination claims.

*2. Whether Plaintiff's Initial EEOC Submissions Constituted a Timely Filed "Charge"*

It is undisputed that Plaintiff's signed, formal "Charge of Discrimination" was not filed until April 29, 2025. However, Plaintiff suggests that her initial April 2024 EEOC inquiry could be considered a "charge" pursuant to *Federal Express Corp. v. Holowecki*, 552 U.S. 389 (2008). In *Holowecki*, the Supreme Court held that materials submitted to the EEOC can constitute a "charge" if (1) the submission contains the information required for a "charge" under the applicable regulations and (2) the submission can be "reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." *Id.* at 402. In addressing the second prong, the submission should be "examined from the standpoint of an objective observer to determine whether, by a reasonable construction of its terms, the filer requests the agency to activate its machinery and remedial processes." *Id.* The Court noted that an agency "is not required to treat every completed Intake Questionnaire as a charge," but it found that a completed questionnaire supplemented with a detailed six-page affidavit that asked the agency to "please force Federal Express to end their age discrimination plan . . . ." was properly construed as a request for the agency to act and was thus a charge. *Id.* at 405-06.[5]

[5] Although *Holowecki* involved a claim under the ADEA, courts have applied *Holowecki* in the context of claims brought under Title VII and the ADA. *See Equal Emp. Opportunity Comm'n v.*

After review of the record, the Court does not find any submissions to the EEOC Plaintiff made prior to the July 2024 deadline (for the hostile work environment claim) or the September 2024 deadline (for the termination claim) that could reasonably be construed as a "charge" under *Holowecki*. Plaintiff contacted the EEOC to schedule an intake appointment on April 30, 2024, but there is no evidence that Plaintiff asked the EEOC to take remedial action at that time. Def.'s Ex. 1, EEOC Records, Doc. 40-1, at p. 74. Plaintiff also appears to have completed an "Inquiry Information" form sometime on or after April 30, 2024, but before June 7, 2024. *Id.* at pp. 76-78.[6] The form describes Plaintiff as a "potential charging party," lists the "approximate deadline for filing a charge" as September 10, 2024, describes Plaintiff's allegations of discrimination, and indicates that Plaintiff will provide additional information before the scheduled June 7th interview; it does not ask the EEOC to take any remedial action. *Id.* In May of 2024, Plaintiff filed a complaint with the Department of Justice describing her allegations of discrimination and stating, "I seek Justice Department intervention to thoroughly investigate my claims"; this was forwarded to the EEOC. *Id.* at 19-27. This comes closer to being a request for remedial action. However, given that Plaintiff submitted it to the Department of Justice, not the EEOC, and that it requests action by the Department of Justice rather than the EEOC, the Court does not find that it could reasonably be construed as a request for the EEOC to take remedial action. Moreover, Plaintiff's subsequent conduct would have indicated to the EEOC that Plaintiff was *not* yet requesting that the EEOC

---

*Vantage Energy Servs., Inc.*, 954 F.3d 749, 754 (5th Cir. 2020) ("[E]very circuit (including this one) to have considered whether *Holowecki*'s holding extends to Title VII and the ADA has determined that it does.").

[6] The form describes the "submission (initial inquiry) date" as April 30, 2024, and indicates that the June 7, 2024, interview has yet to occur. It is unclear whether Plaintiff completed this form or whether it was completed by EEOC personnel, perhaps during a telephone interview. Viewing the evidence in the light most favorable to Plaintiff, the Court will assume Plaintiff completed and submitted it.

take remedial action: the notes from her June 7, 2024, intake interview explicitly indicate that Plaintiff "declined to file [a charge] at this time." *Id.* at pp. 35-36. On July 25, 2024, the EEOC closed the file, noting, "Inquiry has been closed with reason Charging Party declined to File." *Id.* at 97. Plaintiff then apparently took no further action with the EEOC until after the September 12th deadline had passed.

In *Baker v. Legal*, No. 4:20-CV-03870, 2022 WL 22608240, at *5-*6 (S.D. Tex. July 21, 2022), the court confronted very similar facts at the summary judgment stage and found no "charge" had been filed under *Holowecki*. In *Baker,* the plaintiff submitted an EEOC inquiry complaining of discrimination in February of 2019 (within the 300-day deadline), but she did not file a signed charge until May of 2020 (outside the 300-day deadline). *Id.* at *1-*2. When the plaintiff filed suit under Title VII and the ADA, the defendant moved for summary judgment, arguing that she had failed to exhaust her administrative remedies because she had not filed a timely administrative charge. *Id.* at *2. In assessing whether the February 2019 submission was a charge under *Holowecki,* the court noted that where an inquiry form does not ask whether the plaintiff wants to file a charge, courts "look to whether subsequent actions demonstrate an intent to file a charge." *Id.* at *5. The court found that the plaintiff's "conduct after she filed the inquiry does not demonstrate an intent to start the EEOC administrative process." *Id.* at *6. It noted that the plaintiff met with an EEOC investigator, that she chose not to file a charge at that time, and that the inquiry file was closed shortly thereafter. *Id.* The court found that because the plaintiff presented no evidence that the plaintiff intended or attempted to file a charge of discrimination until she filed a new inquiry in May 2020, "the 2019 Inquiry cannot reasonably be construed as a request for the agency to take remedial action to protect [the plaintiff's] rights or otherwise settle

a dispute between [the defendant] and [the plaintiff] and thus does not constitute a 'charge' for purposes of Title VII and ADA exhaustion requirements." *Id.*

Here, as in *Baker*, Plaintiff initiated proceedings with the EEOC by filing an inquiry and participating in an intake interview, but she then expressly declined to file a charge. As in *Baker*, Plaintiff presents no evidence that she attempted to file a charge until well after the deadline to do so had passed. As in *Baker*, Plaintiff's EEOC submissions prior to the deadline cannot reasonably be construed as a request for the EEOC to take remedial action to protect her rights or otherwise settle a dispute between Plaintiff and Defendant, and thus she did not file a timely charge for purposes of Title VII and ADA exhaustion requirements.

The Court's conclusion is also consistent with the language of the "Inquiry Information" form apparently completed by or for Plaintiff, which described Plaintiff as a "potential charging party," gave an "approximate deadline for a charge," indicated Plaintiff would provide more information at a future intake interview, and did not request remedial action. *See Ostrowski v. Port Auth. of NY & NJ*, No. 121CV3328NRMLB, 2023 WL 4975960, at *9-*10 (E.D.N.Y. Aug. 3, 2023) (finding intake form was not a charge where it referred to the plaintiff as a "potential" charging party and advised him of his "approximate deadline for a charge," where the plaintiff indicated on the intake form that he would provide contact information for anyone who would support his claim "later," and where the plaintiff scheduled an interview with the EEOC to discuss the substance of his claim"; stating, "These facts collectively establish that Plaintiff did not believe at the time he filed his intake form that he was filing a charge with the EEOC on December 14, 2020, nor can his initial intake form be reasonably construed as a request that the EEOC take remedial action at that time"; granting summary judgment in favor of the defendant), *aff'd sub nom. Ostrowski v. The Port Auth. of New York & New Jersey*, No. 23-1116, 2024 WL 3219310

(2d Cir. June 28, 2024). *See also Harvey v. Ozark Cmty. Hosp. (OCH) Health Sys.*, No. 5:16-CV-5314, 2017 WL 2345604, at *2 (W.D. Ark. May 30, 2017) (inquiry form and five-page letter submitted to the EEOC describing grievances against former employer were not a charge where the inquiry form explicitly stated that it was not a charge of discrimination, the EEOC's communications to the plaintiff indicated that the EEOC did not believe any charge had yet been filed, and "at no point did [the plaintiff] expressly request the EEOC to take an action against any of the Defendants before her actual charge filing"), *aff'd sub nom. Harvey v. Ozark Cmty. Hosp. Health Sys.*, 720 F. App'x 814 (8th Cir. 2018); *Merchant v. Prince George's Cnty.*, 948 F. Supp. 2d 515, 522 (D. Md. 2013) (intake questionnaire was not a charge where the questionnaire stated that a charge of employment discrimination must be filed within the time limits imposed by law and where the plaintiff did not explain what relief she was seeking or request any action by the EEOC).

Plaintiff emphasizes that her initial inquiry and her ultimate charge share the same charge number, demonstrating that her initial inquiry and final charge were part of a "continuous administrative process." This argument does not persuade the Court that a timely charge was filed under *Holowecki.* The relevant question under *Holowecki* is whether Plaintiff requested remedial action from the EEOC within the 300-day time limit; the fact that the EEOC used the same number to track Plaintiff's initial inquiry and her later charge does not support a finding that the initial inquiry was a request for remedial action.

In sum, the undisputed facts set forth above show that Plaintiff's actions prior to September of 2024 cannot be reasonably construed as a request for the EEOC to take remedial action to protect Plaintiff's rights or otherwise settle a dispute between the employer and the employee. Instead, the record shows only that Plaintiff made an inquiry, met with an EEOC employee, declined to file a

charge, and did not contact the EEOC for several months. These actions cannot be considered a "charge" under *Holowecki.* Because no genuine dispute of material fact exists as to whether Plaintiff filed a timely charge with the EEOC, her claims are subject to dismissal unless equitable tolling applies.

*3. Equitable tolling*

Plaintiff next argues that the Court should apply equitable tolling to extend the deadline for her to file her EEOC charge. The time period for filing a charge with the EEOC "is subject to equitable doctrines such as tolling or estoppel." *Morgan*, 536 U.S. at 113. However, such doctrines "are to be applied sparingly." *Id.* "The doctrine of equitable tolling is a limited one 'reserved for circumstances that are truly beyond the control of the plaintiff.'" *Bledsoe v. Nucor-Yamato Steel Co*., 18 F. App'x 433, 435 (8th Cir. 2001) (quoting *Shempert v. Harwick,* 151 F.3d 793, 797 (8th Cir. 1998)). "[A] party seeking the application of equitable tolling must show: '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.'" *Smith v. Hammer & Steel, Inc.*, No. 4:22-CV-01128-AGF, 2023 WL 3200294, at *3 (E.D. Mo. May 2, 2023) (quoting *Walker v. Norris*, 436 F.3d 1026 (8th Cir. 2006)). *See also Holland v. Florida*, 560 U.S. 631, 649 (2010).

Plaintiff argues that equitable tolling should apply here because she "engaged in EDR, mediation, and EEOC processing, demonstrating diligence." Pl.'s Resp., Doc. 44, at p. 2. The Court agrees with Defendant that the record does not contain sufficient evidence to show either that Plaintiff pursued her rights diligently or that some extraordinary circumstance stood in the way of her ability to file a timely charge.

As to diligence, it is undisputed that Plaintiff participated in an intake interview with the EEOC before the applicable deadlines had passed, had the opportunity to file a charge, *declined* to

pursue her rights with the EEOC at that time, and did not follow up further with the EEOC until after the applicable deadlines had passed. Moreover, even when Plaintiff renewed her communications with the EEOC after the deadline had passed, Plaintiff repeatedly failed to take the actions requested by the EEOC, leading again to the closure of her inquiry for several months due to her inaction. These facts are inconsistent with a finding that Plaintiff diligently pursued her rights.

Even assuming, *arguendo*, that Plaintiff could establish diligence, Plaintiff also points to no evidence of any extraordinary circumstances beyond her control that prevented her from filing a charge prior to September 12, 2024. She does not argue that the EEOC misled her about the date to file a charge or the need to file a charge. She does not argue that any life circumstances made it impossible for her to file a charge. Plaintiff's sole argument appears to be that she participated in an employment dispute resolution process and mediation with UPS following her termination. However, she does not explain how her participation in those processes prevented her from filing a timely charge. She does not, for example, assert that UPS led her to believe that she could not or should not file a charge until the dispute resolution process had concluded or that no charge was necessary because UPS had agreed to resolve her issues.[7] The Court has not found any authority to suggest that ongoing settlement or dispute resolution discussions with an employer, without more, warrant application of equitable tolling or the related doctrine of equitable estoppel. The authority the Court has found is to the contrary. *See Hughes v. Brennan*, No. 3:16-CV-345, 2018 WL 10807026, at *8 (D.N.D. May 3, 2018) (finding that "[o]ngoing settlement negotiations d[id]

---

[7] Such arguments, if made, would more appropriately be analyzed under the doctrine of equitable estoppel rather than equitable tolling. Equitable estoppel "comes into play when a defendant takes active steps to prevent a plaintiff from suing on time." *Kirklin*, 911 F.3d at 534-35 (quotation marks omitted). Equitable tolling, on the other hand, "does not require any misconduct on the part of the defendant." *Id.* at 534.

not establish sufficient reason, under either the doctrine of equitable estoppel or the doctrine of equitable tolling, to excuse [the plaintiff's] failure to timely file her formal complaint" where the plaintiff "allege[d] no affirmative [employer] conduct akin to that which courts have occasionally found to justify equitable relief"); *Rodriguez v. Wal-Mart Stores, Inc.*, 891 F.3d 1127, 1130 (8th Cir. 2018) (rejecting the argument that an employer was equitably estopped from asserting that an EEOC charge was untimely because the employer engaged in settlement discussions with the plaintiff leading up to the charge filing deadline; noting that evidence showed only a general, good faith intent to engage in settlement negotiations and that the employer did not promise to settle or indicate that settlement was imminent).

For the above reasons, the undisputed facts demonstrate that Plaintiff cannot demonstrate that she was diligent in pursuing her rights either before or after the expiration of the 300-day deadline or that some extraordinary circumstance beyond her control prevented her from filing a charge in a timely manner. Thus, she cannot establish equitable tolling of the time to file a charge. Because Plaintiff did not exhaust administrative remedies by filing a timely charge and because Plaintiff is not entitled to equitable tolling, UPS is entitled to summary judgment on Plaintiff's Title VII and ADA claims. *See Kirklin*, 911 F.3d at 534; *Hutson*, 578 F.3d at 827.

## V. CONCLUSION

For the reasons stated above, the Court finds that there are no genuine issues of material fact and that Defendants are entitled to judgment as a matter of law on all of Plaintiff's claims.

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Doc. 38) is **GRANTED**. A separate judgment will accompany this Memorandum and Order.

SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 21st day of September, 2026.